UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Cedric Harrington,                                Case No. 16-25279-beh

                Debtor.                                Chapter 13

## MEMORANDUM ORDER ON THE TRUSTEE'S MOTION TO DISMISS

The issue is whether the debtor's Chapter 13 case should be dismissed based on the debtor's failure to pay half of his 2020 tax refund into his plan despite his argument that unsecured creditors have (almost) received the one-percent distribution his plan promised them, without the refund monies.

### BACKGROUND

The debtor is near the completion of his Chapter 13 plan, which the Court confirmed in September 2016. *See* ECF Nos. 2, 16, and 25. Section 1(B) of the plan requires the debtor to turn over to the Chapter 13 trustee half of all net federal and state income tax refunds "received during the term of the plan." ECF No. 2, at 1. Section 2 of the plan identifies the plan term as 60 months (during which the debtor must make bi-weekly payments of $268.00 to the trustee), *id.*, but section 10 of the plan, which allows for the inclusion of "special provisions" that override any contrary terms contained in the preceding sections of the plan, includes what is known as "plan shortening" language:

> General Unsecured non-priority claims shall be paid not less than 1% of their respective total claims and paid pro rata, with no interest. Anytime the Plan reaches 36 months, the plan shall complete once unsecured creditors receive the percentage numerically indicated above. If the Plan duration actually becomes 36 months or less, then the unsecured claims shall be paid all remaining available funds through month 36 up to 100%.

*Id.* at 6.

On April 30, 2021, the trustee moved to dismiss this case based on the debtor's failure to make plan payments—specifically, his failure to pay into the plan one-half of his tax refund for the 2020 tax year. The debtor argues that because he needs to pay only $108 into the plan for the unsecured creditors to receive a 1% distribution, and one-half of his 2020 tax refund is $1,581, the plan will be complete on its own terms as of the date he pays $108. Therefore, according to the debtor, it would be a waste of time to pay in the refund only to have his tax refund, minus $108, returned to him. The trustee argues that submission of the tax refund is a required plan term and is supplemental to the percentage owed to unsecured creditors. After a hearing, the Court took the matter under advisement.

## ANALYSIS

Tax returns are of import in bankruptcy because the commencement of a bankruptcy case creates an estate that comprises "all legal or equitable interests of the debtor in property." 11 U.S.C. § 521(a)(1). An income tax refund is considered such property. *Segal v. Rochelle,* 382 U.S. 375, 380, 86 S.Ct. 511 (1966); *In re DeVoe,* 5 B.R. 618, 619 (Bankr. S.D. Ohio 1980) ("The filing of an accurate tax return fixes the tax obligation and reveals any refund to which the debtor and the bankruptcy estate may be entitled.").

The parties point to different terms in the plan to bolster their positions about whether the 2020 tax refund is owed. The debtor points to the one-percent distribution his unsecured creditors were promised—and his near-fulfillment of that promise—as the reason why he should not have to surrender one-half of his 2020 tax refund to the trustee. The trustee argues that since the plan also promised the debtor would pay one-half of his tax refunds received during the plan term to the trustee, the debtor must do so, regardless of the percentage allocated to unsecured creditors. The Eastern District of Wisconsin's Model Plan form, as it existed in 2016 when the debtor drafted his plan, contained a standard provision that allowed the debtor to choose whether he wished to keep his tax refunds or surrender one-half of the refunds received during the plan to the trustee. ECF No. 2. The debtor opted for the latter.

The trustee also directs the Court to two previous rulings where other judges in this district ruled in favor of the trustee on a challenge to payment of late-in-plan tax refunds: *In re Win*, Case No. 16-31085 (oral ruling issued on Sept. 8, 2020); and *In re Nasino*, Case No. 16-30555 (oral ruling issued on Aug. 11, 2020). In both of these cases, the debtor's confirmed Chapter 13 plan included the requirement that the debtor pay in half of any tax refunds received during the term of the plan, as well as the same plan "shortening" language at issue here. *See* Case No. 16-31085, ECF No. 2 at 6; Case No. 16-30555, ECF No. 2 at 6.

In *In re Win*, the trustee had moved to dismiss the debtor's case based on his failure to pay the trustee half of his 2019 tax refunds. The debtor responded that he was not required to do so because the plan had completed at 36 months due to the plan-shortening language—even though the debtor was still making plan payments to the trustee to pay in (belatedly) half of his 2016, 2017, and 2018 tax refunds. Judge Ludwig rejected the debtor's argument and required the debtor to pay one-half of his 2019 tax refund to the trustee for creditor distribution because the debtor had not yet completed his plan, relying in part on Chief Judge Halfenger's earlier decision in *In re Nasino*. *See* Case No. 16-31085, ECF Nos. 45, 46, and 47.

In *Nasino*, the debtor had objected to the trustee's final report and account, arguing that the trustee had erred in using a portion of the debtor's 2019 tax refunds to distribute *more* than a 1% dividend to unsecured creditors (approximately 22%, or $1,687.11, rather than $76.69), because, according to the special provisions, the plan "should have completed once the 36 month mark was reached and general unsecured creditors were paid 1% on their claims." Case No. 16-30555, ECF No. 39. The debtor asked the court to order the trustee to refund the extra 21% paid to general unsecured creditors. The trustee responded that nothing in the plan's special provision expressly contradicted the requirement to pay to the trustee 50% of all net tax refunds received during the plan term. *Id.* at ECF No. 43. The court favored the

trustee's position and denied the debtor's request. While acknowledging that plan provisions may have conflicted, *i.e.* the requirement that the debtor turn over to the trustee half of all net federal and state income tax refunds received during the plan term, versus the plan's special provision for shortening of the plan term, the court concluded that any plan ambiguity should be resolved against the debtor as drafter of the plan. *See id.* at ECF No. 47. ("[T]he trustee's construction of the plan's provision is more reasonable than the debtor's conflicting construction. Moreover, even if the debtor's construction . . . is correct . . . any ambiguity in the plan's provisions should be resolved against the debtor, who drafted those provisions.").

  This Court likewise concludes that the trustee's reading of the debtor's plan is the correct one. Here, the debtor admits that $108 remains to be paid into the plan before unsecured creditors will receive the 1% minimum distribution on their claims—in other words, that the plan is not complete, so his 2020 tax refunds fall within the scope of section 1(B) of the plan as those received "during the term of the plan." Moreover, the plan calls for a distribution to unsecured creditors of "[n]ot less than 1%." The term "not less" imposes a floor as opposed to a ceiling. In sum, the plan term shortening provision does not conflict with the provision requiring the payment of tax refunds to the trustee.

  Accordingly, the Court follows the approach taken in *In re Win* and **DENIES** the trustee's motion to dismiss, subject to the condition that on or before October 29, 2021, the debtor shall comply with the existing plan term that requires him to turn over half of his 2020 tax refund to the trustee.

Dated: September 29, 2021

By the Court:

*[signature]*

Beth E. Hanan
United States Bankruptcy Judge